<u>UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| DESHOULIERES S.A., | : |
|    Plaintiff | DOCKET NO. 06CV5163 (HB) |
| v. | : |
| CUTHBERTSON IMPORTS, INC., | : |
|    Defendant | : AUGUST 2, 2006 |

<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER TO THE DISTRICT OF CONNECTICUT</u>

Pursuant to 28 U.S.C. Section 1404(a) and Local Rule 7.1 the defendant submits this memorandum of law and attached Affidavit marked Exhibit A from the President of the defendant Allyn Powell, in support of its motion to transfer to the District Of Connecticut.

<u>Background:</u>

The plaintiff has started this action claiming, iter alia, breach of contract, trademark violations and New York common law violations stemming from a contract dated December, 1993 with a term of five years that is attached to the complaint. Plaintiff fails to allege the contract was renewed in 1998 or 2003 or thereafter. Plaintiff omits dates of the alleged trademark violations. In addition, plaintiff omits any reference to New York facts or a substantial connection to

1

New York that would permit the use of New York common law in this matter, as alleged in count three. Moreover, plaintiff has attached a contract that in Article 10 dictates the use of French law. Plaintiff fails to explain why U.S. law would apply for a violation of a contract dictating French law, nor why a Connecticut corporation would be subject to New York common law for goods shipped by a French company into Connecticut. From 1993 through January 2005, from its Connecticut location, defendant sold roughly 99% of plaintiff's goods to the wholesale food industry (Aff. Par. 7).

Law:

### A. THERE IS NO PRESUMPTION THAT VENUE IS APPROPRIATE IN THIS DISTRICT AS PLAINTIFF IS A FOREIGN ENTITY THAT RESIDES IN FRANCE. FURTHERMORE, IT IS APPROPRIATE TO TRANSFER THIS MATTER TO THE DISTRICT OF CONNECTICUT WHERE DEFENDANT AND NEARLY ALL THE WITNESSES IT WILL CALL RESIDE.

>         A motion to transfer venue rests with the sound discretion of the district court. Schwartz v. R.H. Macy's Inc., 791 F.Supp. 94 (S.D.N.Y. 1992). Factors the court should consider include governing law, location of underlying facts; the convenience of the parties and witnesses; the relative ease of access to all the sources of proof and availability of process to compel attendance of unwilling witnesses; trial efficiency and the interest of justice. 800 Flowers Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 133 (S.D.N.Y. 1994); Don King Productions, Inc. v. Douglas, 735 F.Supp. 522 (S.D.N.Y. 1990). D'Anton v. The Doll Factory, 937 F.Supp. 320, 322-323 (1996).

As in this case the plaintiff in D'Anton also haled from a European

country, Spain, and the defendant and its witnesses from a foreign state.  In transferring the matter, the court noted that, "although a plaintiff's choice of forum is generally given substantial weight, this presumption does not apply in cases such as this one where there is little material connection between the chosen forum and the facts and issues of the case. <u>Anadigics, Inc. v. Raytheon</u>, 903 F.Supp. 615, 617 (S.D.N.Y. 1995) (citing <u>Seagoing Uniform Corp. v. Texaco Inc.</u>, 705 F.Supp. 918, 936 (S.D.N.Y. 1989); <u>Bordiga v. Directors Guild of America</u>, 159 F.R.D. 457 (S.D.N.Y. 1995)."  <u>Id.</u> at 323.  The plaintiff, Deshoulieres S.A., is a French company, that appears to have chosen New York for hyper-technical reasons.  It alleges no substantial connection with the Southern District and based on the facts of the case no substantial events occurred here.

> In determining whether transfer of venue is warranted 'for the convenience of the parties and witnesses [and] in the interest of justice,' courts generally consider several factors, including (1) the weight accorded the plaintiff's choice of forum, (2) the place where the operative facts took place, (3) the convenience of the parties, (4) the convenience of the witnesses, (5) the availability of process to compel unwilling witnesses, (6) the location of relevant documents and the relative ease of sources of proof, and (7) trial efficiency and the interests of justice. <u>Balabon v. Pettigrew Auction Co., Inc.</u>, 1997 WL 470373, at *2 (E.N.Y. 1997); see also <u>Wilshire Credit Corp.</u>, 976 F.Supp. at 181...Generally, the plaintiff's choice of forum is entitled to 'substantial weight,' unless the plaintiff chooses a foreign forum and the cause of action bears little relation to the chosen forum.

3

Verizon Online Services, Inc. v. Ralsky, 203 F.Supp.2d 601, 623-24 (E.D.Va.2002); see also Coker v. Bank of America, 984 F.Supp. 757, 766 (S.D.N.Y.1997) (plaintiff's choice of forum entitled to lesser weight because it was not his place of business); Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F.Supp. 81, 96 (S.D.N.Y.1995) (deference accorded to plaintiff's choice of forum is diminished substantially where forum is neither plaintiff's home district nor the place where events or transactions underlying the action occurred). Bassili v. Chu, 242 F.Supp.2d 223, 232 (W.D.N.Y. 2002).

Plaintiff based venue on the mere fact that the defendant is a corporation (See paragraph 5 of the complaint). Plaintiff is a company that resides in France and the defendant is a corporation that resides in Connecticut. (Aff. Par.5). The defendant has no offices or presence in New York. (Aff. Par. 5). The contract attached to the complaint says that it was signed in New York and France. However, defendant's President Allyn Powell signed the contract in Connecticut and believes plaintiff signed it in France (Aff. Par. 6). Moreover, the defendant is not sure that the contract attached to the complaint is the one it signed, although the signature page bears its signature (Aff. Par. 6). The 1993 contract was negotiated between the parties over the telephone from the defendant's Connecticut location and the plaintiff's French location, and in person in New Jersey, London, England and defendant's offices in Connecticut (Aff. Par. 6). Moreover, before the contract was reduced to writing, Allyn Powell shook hands on the details of

4

agreement with Yves Deshoulieres at the defendant's Connecticut location (Aff. Par. 6). The defendant never met with anyone in New York with regard to a contract nor any matter alleged in the complaint (Aff. Par. 6). The performance of the contract on the plaintiff's part, the sale of good was from France and the performance on the part the defendant was from Connecticut (Aff. Par.'s 7 & 8). The contract under Article 14 speaks of only two venues for a lawsuit, France and Connecticut. No where does the contract mention a New York venue or New York law. The only reason defendant can glean that the matter is in New York, is that plaintiff's lawyers reside in New York. However, since they are presumably not going to be witnesses, it does not trump the fact that the witnesses for the plaintiff almost exclusively reside in Connecticut (Aff. Par.'s 12 & 13). The defendant resides in Connecticut as do nearly all its witnesses and the plaintiff, resides in France. It can make no material difference as regards plaintiff's convenience to come to Connecticut. Among others, the defendant's witnesses include current and former employees and six non-employee warehouseman all who reside in Connecticut (Aff. Par. 12). They can testify that defendant neither sold nor distributed any competing products of Apilco prior to January, 2005 and did not substitute any

5

products for Apilco's during or after, January, 2005 (Aff.     ). By seeking to transfer this matter to the District of Connecticut, it can hardly be said that defendant is merely trying to shift the inconvenience from it to the plaintiff. (See <u>Brierwood Shore Corp. v. Sears Roebuck & Co.</u>, 479 F.Supp. 563, 566 (S.D.N.Y. 1979). There is no realistic inconvenience to the French plaintiff to try the case in Connecticut. However, there is a massive inconvenience to the many Connecticut based witnesses some of whom are former employees and six non-employee warehouseman who are subject to compulsory testimony in Connecticut and not in New York.

### B. NEW YORK COMMON LAW DOES NOT APPLY TO THIS MATTER.

In Count three, the plaintiff alleges violations of the common law of New York, yet the contract attached to the complaint states in Article 13 that French law governs. New York law would not apply to this matter if French law governs. In the alternative, the law governing in the absence of an effective choice by the parties to a contract, "are determined by the local law of the state which, with respect to that issue has the most significant relationship to the transaction." Section 188, <u>Conflict of Laws</u>, Restatement 2nd. p. 575. As shown by Allyn Powell, he signed the contract on behalf of the

defendant in Connecticut, not New York. He also believes it was signed by the plaintiff in France (Aff. Par. 6). Nevertheless, standing alone, the place of contracting is a relatively insignificant contact (Section 188, Conflict of Laws, Restatement 2nd. p. 579). For example, New York as merely a place of contracting is not enough to even confer jurisdiction (See Presidential Realty Corporation v. Michael Square West, Ltd., 44 N.Y.2d 672, 673-674, 405 N.Y.S. 2d 37 (1978)). The performance of the contract took place in Connecticut (Aff. Par.'s 7 & 8). The negotiations between the parties took place in person in Connecticut, New Jersey and London, England and over the telephone from Connecticut to France (Aff. Par. 6). The facility from which the defendant sold the Apilco products was in Connecticut (Aff. Par. 7). Additionally, trademark infringement is a tort. Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215,218 (1st Cir. 1989). In trademark infringement the wrong takes place where the "passing off" occurs. Vanity Fair Mills, Inc. v. T. Easton Co., 234 F.2d 633, 639 (2d Cir. 1956). The defendant, its facilities, employees and website are all located in Connecticut. "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant

7

relationship to the occurrence and the parties... (Section 145, <u>Conflict of Laws</u>, Restatement 2nd. p. 414). The contacts to be taken into account in determining the applicable law are the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties and the place where the relationship, if any, between the parties is centered (Section 145, <u>Conflict of Laws</u>, Restatement 2nd. p. 414). There does not appear to be any significant factor to apply New York law. This is also so if the contract choice of France applies. It's clear the parties may choose the law of the forum to apply (Section 187, <u>Conflict of Laws</u>, Restatement 2nd at page 134).

**CONCLUSION:**

This matter should never have been brought in New York. It should be transferred to the District of Connecticut for the convenience of the parties and witnesses and the ability of the plaintiff to have a fair trial in order that it may bring into the trial witnesses from Connecticut who can rebut the plaintiff's claims.

THE PLAINTIFF,

BY _____
ANDREW M. LA BELLA, ITS ATTORNEY
#al3465
235 Main Street
White Plains, New York 10601
914-948-2300
914-948-4745(fax)

<u>UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK</u>

DESHOULIERES S.A. :

    Plaintiff : DOCKET NO. 06CV5163(HB)

v. :

CUTHBERTSON IMPORTS, INC. :

    Defendant : AUGUST 2, 2006

## AFFIDAVIT

1. My name is Allyn Powell and I am over the age of 18 and understand the obligations of an affirmation.

2. I am the President of the defendant Cuthbertson Imports, Inc. and have been so during the events mentioned in this affidavit.

3. This affidavit is based on personal knowledge.

4. I reside in the State of Connecticut in the Town of New Canaan.

5. Defendant Cuthbertson Imports, Inc. is a Connecticut corporation which was formed on November 2, 1972, has always resided in Connecticut and has its principal place of business at 6 Hollyhock Road, Wilton, Connecticut 06897 and has never had a location in New York.

6. The defendant did sign a contract with the plaintiff in December, 1993, however, it was signed by the defendant in Connecticut and I believe the plaintiff if France. In fact, I believe I signed an

1

**Exhibit A**

english version of the contract in Connecticut and I am not sure that the one attached to the complaint is the actual contract, although it is my signature. The negotiation for the contract took place over the telephone from the then office of the defendant in Connecticut by myself on behalf of the defendant and Yves Deshoulieres, plaintiff's President, in France on behalf of the plaintiff. I negotiated in person with Yves Deshoulieres and plaintiff's representative David Holmes (President of Elite Design) in London, England, as well as, over the telephone from Connecticut. In addition, I negotiated with plaintiff's representative James Monilaws in person in New Jersey and over the telephone from Connecticut. The details of the contract were orally agreed to with a handshake between myself and Yves Deshoulieres at the Connecticut office of the defendant. There were never any meetings between the plaintiff and defendant in New York and I believe the plaintiff signed the contract in France.

7. The defendant bought product from the plaintiff which was all shipped by the plaintiff to the defendant's warehouse in Connecticut. From there the defendant sent the goods to wholesale food industry users. From 1993 to January, 2005 roughly 99% of the sales of products were to the wholesale food industry.

8. All customers of the defendant for which Apilco products were sold were contacted from the Connecticut office of the defendant. From its office in Connecticut, the defendant sold approximately $10,000,000.00 worth of Apilco products from December 1993 to January, 2005. The defendant's website referred to in the complaint originates from Connecticut. However, it has not been actively used by the defendant in years. It was essentially a dead site.

9. At the Connecticut address, the defendant received from the plaintiff all telephone calls, documentation, e-mails, invoices and faxes. Defendant received from customers all orders for Apilco goods in its Connecticut office. Defendant generated all purchase orders to the plaintiff from defendant's office in Connecticut.

10. Defendant does not physically reside in the Southern District of New York, is not licensed to do business in the State of New York, does not maintain an office, warehouse or other place of business within the Southern District of New York or within the State of New York, and has no employee within the State of New York. It does not pay income taxes in New York. All of the above applies for the period of time mentioned in the complaint or from 1993 to the present.

11. For the last ten years the plaintiff has been paid by the defendant through its Connecticut Bank account.

12. It is far more convenient for the relevant witnesses that defendant names, in Connecticut for the case to be tried in the District of Connecticut. Attached hereto as Exhibit 1 is a list of witnesses who can testify that the defendant neither sold nor distributed any competing products of Apilco prior to January, 2005 and did not substitute any products for Apilco's during or after, January, 2005.

13. It would be a tremendous hardship for all of the Connecticut witnesses to come to New York for this matter. Furthermore, the attached list has on it six current non-employee warehouseman from Stratford, Connecticut and former employees who are not subject to compulsory process in New York nor are any of the other Connecticut witnesses.

14. All of the documentation relevant to this matter from plaintiff's perspective exists in Connecticut.

_____
Allyn Powell

Subscribed and sworn to before me this 2nd day of August, 2006.

_____
Notary Public

4

LISA M. CONSOLATI
NOTARY PUBLIC
MY COMMISSION EXPIRES DEC. 31, 2008

## Address List

| Name | Address | City | STATE | Zip | Comments |
|---|---|---|---|---|---|
| Ida D'Ademo | 34 Crescent Street, Unit 1H | Stamford | CT | 06906 | Cuthbertson Employee /Order Entry |
| Tin Duffy | 5 Pier Court | | | | Assistant Bookkeeper since 1972 - |
| | | Milford | CT | 06460 | Cuthbertson Employees since 1980 |
| Bo Hlavac | Seeley Street | | | | Operations Manager |
| | | Danbury | CT | 06810 | Retired Cuthbertson Employee - Assistant Sales Manager |
| Patricia Kolkmeyer | 3 Millbrook Drive | Norwalk | CT | 06851 | Cuthbertson Employee since 1992 - Secretary |
| Moira Miller | 3 Shadow Wood Circle | Monroe | CT | 06468 | Cuthbertson Employee since 1990 - Bookkeeper |
| Jay Powell | 93 Old Hickory Road | Fairfield | CT | 06824 | Former Sales Manager of Cuthbertson's defunct Food Service Division |
| Beth Renzulli | 114 Old Easton Tpke | Weston | CT | 06883 | Cuthbertson Employee since 1997 - Customer Service of Cuthbertson |
| Lisa Lupien | 860 Honeyspot Road | Stratford | CT | 06615 | Majority Owner of Public Warehouse used by Cuthbertson |
| Tim Carranno | 860 Honeyspot Road | Stratford | CT | 06615 | Handles Shipping for Cuthbertson from Public Warehouse |
| Alison Kuzincus | 860 Honeyspot Road | Stratford | CT | 06615 | Minority Owner of Public Warehouse/Operations Officer |
| Joseph P Aloi | 255 Long Beach Blvd | Stratford | CT | 06615 | Director of Perations for 2nd PW used by Cuthbertson |
| Peter Heanue | 255 Long Beach Blvd | Stratford | CT | 06615 | Accounts Manager for 2nd PW used by Cuthbertson |
| Mike Rosette | 255 Long Beach Blvd | Stratford | CT | 06615 | Manager of Business Operations for 2nd PW used by Cuth |
| Steve Glickman | 95 Putnam Avenue | Hamden | CT | 06517 | Former Sales Rep of Apilco products for Cuthbertson |
| Peter Reynolds | 917 Avendia Presidio | San Clemente | CA | 92672-2217 | Former Sales Rep of Apilco products for Cuthbertson but may be presently salesman for Deshoulieres |
| Joe Schulz | 2059 Constitution Ct | Aurora | IL | 60506-3266 | Former Sales Rep of Apilco products for Cuthbertson |
| James Morilaws | 3 Stonepit Close | Olney Bucks | England | MK 465LX | Manager of Elite Designs for several years- became Sales Design - Currently consultant for Cuthbertson & Marketing employee of Cuthbertson after sale of Elite |
| David Holmes | 91 Brim Hill, Hamstead Garden Suburb | London | England | NW 4 | UK distributor for Apilco for 50 years - President & part owner of Elite Design- presently President of Distributing company for Food Service in UK and consultant to American Food Service in USA |

Exhibit 1